447 A.2d 617

**COMMONWEALTH of Pennsylvania ex rel. Joanne BUCHAKJIAN,**

**v.**

**Leon BUCHAKJIAN, Appellant.**

Superior Court of Pennsylvania.

Argued May 6, 1981.

Filed April 30, 1982.

Reargument Denied July 26, 1982.

however, as the assault charges were not before the lower court during trial.

214

Saul Levitt, Philadelphia, for appellant.

Stanley R. Kotzen, Media, for appellee.

Before SPAETH, CAVANAUGH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order directing a husband to support his wife and children. The husband argues that the lower court erred in admitting and considering hearsay evidence.[1] We agree and therefore reverse and remand for a new hearing.

Leon and Joanne Buchakjian were married on June 10, 1956, and separated on November 13, 1978. They have three children: Maria, born April 19, 1959; Levon, born April 7, 1961; and Charles, born June 20, 1964. On January 4, 1979, the lower court, with the agreement of the parties, entered an order directing the husband to pay $300 a week to support his wife and the three children. On June 28, 1979, the husband filed a petition to reduce the order, alleging that since the time of the order, "Petitioner's heating oil business has declined drastically and Petitioner has experienced a substantial loss of income," and that his son Levon had reached the age of 18. The wife filed an answer and a cross-petition to increase the order, alleging that the husband's earnings and her expenses and the children's had increased. On December 6, 1979, the lower court held a hearing, and on January 23, 1980, it entered an order reducing the original order; the husband was directed to pay $250 a week to support his wife and his children Maria and Charles, and Levon was removed from the original order. The court also denied the wife's cross-petition to increase support. The husband has appealed.

We will not disturb the lower court's decision on a petition to reduce support unless the court has abused its discretion. *Commonwealth ex rel. Jeske v. Jeske*, 283 Pa.Superior Ct. 209, 423 A.2d 1063 (1981); *Berry v. Berry*, 278 Pa.Superior Ct. 30, 419 A.2d 1340 (1980); *Commonwealth ex rel. Mainzer v. Audi*, 266 Pa.Superior Ct. 122, 403 A.2d 124 (1979). An abuse of discretion occurs where the lower court misapplies existing law, makes a manifestly unreasonable judgment, or rules with partiality, prejudice or ill will.

---

1. The husband makes other arguments, but we find it unnecessary to consider them.

*Straub v. Tyahla*, 274 Pa.Superior Ct. 411, 418 A.2d 472 (1980). The husband argues that the lower court committed an abuse of discretion in that it misapplied existing law by admitting over objection and considering hearsay testimony by the wife and her expert witness.

In support of his petition to reduce support, the husband testified that his business had lost customers because they had switched from oil to gas. N.T. 12/6/79, 23. He also testified that he had voluntarily dropped some customers because it became too expensive to deliver oil to outlying areas, *id.*; some of these customers included "churches and theaters and volume accounts that have large tanks," *id.* 26. The wife then testified as follows:

BY MR. KOTZEN [counsel for the wife]:

Q. Did you have any conversations with customers who have no longer purchased oil from Leon's Heat and Fuel?

A. Yes, I have.

Q. And they were quite—

MR. LEVIT [counsel for the husband]: (interposing) Objection.

THE COURT: I will overrule your objection . . . .

\* \* \* \* \* \*

THE WITNESS: I received quite a few phone calls from customers that my husband dropped as he states, because the distance is too far. One of them particularly is the Armenian Martyrs' Church, which is in Drexel Hill and our business is in Drexel Hill. That was dropped for no reason at all.

\* \* \* \* \* \*

Q. Give me names and dates and places and people?

MR. LEVIT: May I have a standing objection to the hearsay?

THE COURT: You have a standing objection and the purpose of this testimony, she as a part owner is endeavoring to present evidence to show the reduction of business of this enterprise was partially due to his responsibility and for that reason the Court is permitting it.

MR. KOTZEN: Names and places of customers of Leon's Heat and Fuel who no longer are customers of Leon's Heat and Fuel, date, time and place.

\* \* \* \* \* \*

A. First of all the two churches that were dropped, Saint ___ Church in Wynnewood, Pennsylvania, which is only a stone's throw from our home for no reason at all.

Q. Who did you speak to there?

A. They pay their bills.

MR. LEVIT: Objection. He asked a question who she spoke to.

THE WITNESS: You didn't give me a chance.

THE COURT: Let her answer the question. Do you object to all this testimony and I grant you an exception. You have an exception to her testimony with reference to referring to certain accounts which she alleges were part of the business and which he of his own volition dropped from his account. That is the purpose. I grant you an exception.

MR. LEVIT: Then I will stop hopping up and down.

THE COURT: You may hop up and down whenever you want.

THE WITNESS: May I start?

BY MR. KOTZEN:

Q. I think so.

A. The Saint Sahab Armenian Church, Wynnewood, Pennsylvania. Then the President of the Council, Mr.         .

Q. Who you spoke with?

A. That's correct. Secondly, Rev.         from the Saint Armenian Martyr Church.

Q. Where is that located?

A. Drexel Hill.

Q. Is that within a close line?

A. Only a few minutes from our home.

Q. How long have they been customers?

A. For six or seven years.

Q. Were they paying?

A. Good paying customers. I spoke to the then minister of the church in Drexel Hill, the Armenian Martyr, Rev. who was quite disturbed because that was my husband's church.

Q. What other customers, if any, contacted you or you had contacted?

A. Actually they called me. There was a Mr. Blavakus who called me one morning at six o'clock, because they had no oil and my husband refused to deliver the oil and they live right in Broomall.

Q. When did Mr. Buchakjian drop these church accounts?

A. He dropped them right after we started having problems in our home, before I left the home.

     *     *     *     *     *     *

BY MR. KOTZEN: Do you know of any other accounts that were terminated by Leon?

MR. LEVIT: Objection to the word terminated. The accounts are no longer there.

BY MR. KOTZEN:

Q. Accounts no longer there?

A. Yes, there is a Manujian, in Media, not far from here which is only a fifteen minute ride from our place of business. There is a Noraugus, all good paying customers. If I look at the list, I can tell you the ones that are good customers, that said it was too far away for him to deliver. They were all good customers. Noraugus called me himself and met me in church one day and was disturbed. It made him feel very bad. He said he never did anything wrong to Leon. In fact he ran out of oil one day and he believed—

MR. LEVIT: (interposing) Objection to what he believed. N.T. 12/6/79, 107–114.

■ Hearsay has been defined as "a statement made out of court, the statement being offered to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence § 246 (2d ed. 1972), *cited with approval,*

*Commonwealth v. Landy,* 240 Pa.Superior Ct. 458, 465–66, 362 A.2d 999, 1002–3 (1976). The wife's testimony was without doubt hearsay—nor does she argue otherwise. She testified to what others who were not in court had said to her: that two customers had said that the husband had dropped them "for no reason at all," N.T. 110–11; that another had said he had been dropped although "he never did anything wrong to [the husband]", N.T. 114; and that another had said that the husband "refused to deliver the oil," N.T. 112. (This last was double hearsay: the wife saying what the customer said the husband said.) That this testimony was offered for the truth of the matter asserted is beyond doubt, for it was relevant only to rebut the husband's testimony that the customers had dropped him as a supplier, and to support the wife's claim that the husband's business had not declined but instead he had voluntarily and in bad faith reduced it. Furthermore, the lower court, even though it overruled counsel's persistent hearsay objections, understood that the testimony was offered for the truth, stating, for example, "You have an exception to her testimony with reference to referring to certain accounts which she alleges were part of the business and which he of his own volition dropped from his account. That is the purpose." N.T. 111. *See also* N.T. at 107–08, 109, 110, 111, 113.

Similarly, the lower court admitted, over objection, the testimony of the wife's expert witness, an accountant. The accountant testified that one of the husband's suppliers, Mr. Mecke of Gulf Oil Company, had told him over the telephone the number of gallons of oil that Gulf had sold the husband in 1978. N.T. 158–64. This testimony was offered to rebut the husband's testimony that his income for 1978 was $30,000. *Id.* 76. As explained by the wife's counsel:

> What he is going to tell the Court, he analyzed the 1978 return and based upon the information he received from Gulf and the information that Mr. Buchakjian testified today, that Mr. Buchakjian understated his income for '78. N.T. 161.

As with the wife's testimony, the accountant's testimony was hearsay, and not admissible under any exception to the

hearsay rule. *See Matter of Franklin Township Board of Supervisors*, 475 Pa. 65, 379 A.2d 874 (1977); *Carswell v. Southeastern Pennsylvania Transportation Authority*, 259 Pa.Superior Ct. 167, 393 A.2d 770 (1978); *Commonwealth v. Landy, supra; Eller v. Work*, 233 Pa.Superior Ct. 186, 336 A.2d 645 (1975).

In its opinion filed in response to the husband's appeal, the lower court did not address the question of whether the wife's and the accountant's testimony had been properly admitted. Instead the court said:

> The defendant [husband] contends that the Court erred in admitting certain hearsay testimony of the relatrix [wife] and her expert witness. This testimony was presented for the purpose of supporting the relatrix's petition for an increase in the support order. The Court does not address itself to this contention because this testimony was not considered in connection with the defendant's petition, and the Court dismissed the relatrix's petition.

Slip op. at 7.

We find ourselves unable to accept this disposition, for two reasons.

First, the record shows that the wife's and accountant's hearsay testimony was not presented only incident to the wife's petition for an increase in support. Both the husband's petition to reduce and the wife's petition to increase were heard as presenting a single issue. When counsel stated, "I am not sure which Petition we are proceeding on first," the court replied: "It is all one set of facts, same husband, same failure to comply, same Petition to Reduce. Call it by what name you will." N.T. 9. Moreover, the testimony did not go to show that the wife's and children's expenses had increased—which would have been relevant to the wife's petition to increase—but to show that any decrease in the husband's business was due to his bad faith—which was relevant to the husband's petition to reduce.

Second, from other parts of the court's opinion it is apparent that despite its disclaimer, the court did consider

the hearsay testimony in ruling upon the husband's petition. After stating the issues before it, the court says:

> The facts before this Court demonstrate that the defendant has not met his burden in proving the existence of material and substantial changes in circumstances since the entry of the original support order, except for the fact that Levon has been regularly employed as of November 22, 1979. Although the son Levon became eighteen years of age since the original order, he still continued as a student and was therefore entitled to support until he left school and became employed as of November 22, 1979. It is to be noted that Levon left school because the defendant gave him a job in his business. This Court treats this employment offer as having been made in good faith, and not for litigation purposes. Therefore, solely for this reason, Levon was removed from the support order as of November 22, 1979 and the order was reduced and the defendant was directed to pay the sum of $250.00 per week for the support of wife and the two children, Marie and Charles.

Slip op. at 3–4.

It is therefore evident that the court entirely discounted the husband's testimony regarding a loss of business. Indeed, later in its opinion the court says as much:

> It is undisputed that a spouse cannot intentionally reduce his actual earnings, and then use the reduction in earnings to obtain a reduction in the amount of support he must provide for his family. *Weiser v. Weiser*, 238 Pa.Super. 488 [362 A.2d 287] (1976). Courts have traditionally reviewed with suspicion any sudden reduction of support payments based on diminished income. This is especially so when the defendant is in business for himself. *Comm. ex rel Goichman* [*v. Goichman*, 226 Pa.Super. 311, 316 A.2d 653] supra. In the instant case, the Court properly took into account all of the pertinent factors in determining that there was no material or substantial change in the defendant's financial status to warrant a further reduction of the support order.

The Court not only views with suspicion defendant's alleged reduction in income from the business, but is also seriously concerned about defendant's credibility. See *Comm. ex rel Arena v. Arena*, 205 Pa.Super. 76 [207 A.2d 925] (1965). After observing the defendant and the manner in which he testified, the Court is of the opinion that the defendant in this case was less than forthright and that he was not a totally credible witness.

Slip op. at 6–7.

We have no doubt that in thus assessing the husband's credibility, the court was necessarily influenced by the wife's and accountant's hearsay testimony. Not only was the testimony offered to impeach the husband's credibility, but it *was admitted by the court* for that very purpose.

■ Often an erroneous evidentiary ruling will not require reversal. But where, as here, erroneously admitted evidence goes to the heart of the issue, we must reverse and remand for another hearing. We intimate nothing as to what the outcome on remand should be. We only hold that a hearing must be conducted in accordance with settled law. If the husband has voluntarily reduced his business and manipulated his books, the wife may prove it, by competent evidence.

The order of the lower court is reversed and the case remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Any further appeal must be by appeal from such order as the lower court enters after further proceedings.

CAVANAUGH, J., files a dissenting statement.

CAVANAUGH, Judge, dissenting:

I would affirm the order of the court below. As the majority has pointed out, we will not reverse the decision of the lower court on a petition to reduce support in the absence of an abuse of discretion. I can find no such abuse. The majority reverses on the grounds that the court below erred in admitting hearsay evidence in connection with the wife's testimony and that of her expert witness. In dealing with this the court below stated:

The defendant contends that the Court erred in admitting certain hearsay testimony of the relatrix and her expert witness. This testimony was presented for the purpose of supporting the relatrix's petition for an increase in the support order. The Court does not address itself to this contention because this testimony was not considered in connection with the defendant's petition, and the Court dismissed the relatrix's petition.

The majority is not satisfied with this, however, and feels that the court was influenced by the hearsay despite its statement to the contrary.

Further, the majority would place the burden of proof on the wrong party in the case of a petition to reduce support. The burden of proving that circumstances have changed is upon the party petitioning the court to reduce a support order, in this case the husband. *Bell v. Bell*, 228 Pa.Super. 280, 323 A.2d 267 (1974). Yet the majority states "if the husband has voluntarily reduced his business and manipulated his books, the wife may prove it, by competent evidence." In my opinion, the wife has no duty to prove anything in connection with the husband's petition to reduce support.