484 A.2d 121

**Kathrina Anne DE WITT, Appellant,**

v.

**John P. KAISER.**

Superior Court of Pennsylvania.

Argued July 12, 1984.

Filed Nov. 2, 1984.

Harry C. Barbin, Rockledge, for appellant.
Joseph Feldman, Philadelphia, for appellee.

Before WIEAND, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from an order of the Court of Common Pleas of Montgomery County sustaining appellee's exceptions. On September 16, 1981, appellant, Kathrina Anne DeWitt, filed a complaint for support against her former husband, John P. Kaiser, appellee, averring that appellee had failed to pay her the entire amount due under a separation agreement entered into by the parties on November 16, 1979, and, further, that appellee had failed to provide her with a proper accounting of his income for the year 1980. On February 1, 1982, the parties filed a stipulation that the issue be reduced to an interpretation of the aforementioned separation agreement.

A hearing before a master was held on April 20, 1982, and the master filed findings of fact and conclusions of law and a recommended order on May 11, 1982, in appellant's favor. On the same day, the lower court entered an order approving the recommendations of the master and providing that the parties had 10 days to demand a hearing. Appellee thereupon filed exceptions to the order, and the Court ordered a hearing to be held *de novo*. A formal hearing was not held. On November 3, 1982, the parties appeared before the lower court judge who called for argument in chambers. After this meeting on January 6, 1983, the lower court judge sustained appellee's exceptions. This appeal followed, and we reverse.

The sole issue in this appeal [1] concerns the interpretation of one term of the agreement. According to appellant, "income", as used and defined in the agreement, includes *all* dividends and interest received by appellee whether outright or through the conduit of a trust. Appellee, however, urges that trust income is excluded when computing

1. Appellant raises two issues. In view of our disposition, we need not discuss the other issue which involves his due process rights *vis-a-vis* the argument in chambers.

his "income".[2] If "income" includes receipts from trusts, the amount of support due appellant under the agreement would increase for the year 1980 and, possibly, for subsequent years.

The pertinent language of the separation agreement is as follows:

(ii) For purposes of this Paragraph C, *the term "income"* means cash receipts consisting of salary, *dividends,* and taxable and non-taxable *interest,* not reduced by depreciation or depletion, or losses from any trade or business. The *term "income" also shall not include* or be reduced by, as the case may be, capital gains or losses, the *principal of gifts and inheritances,* the separate income of a spouse in the event of Husband's remarriage, or various types of taxable income, including but not limited to income relating to grant of stock options, and/or stock purchase plans maintained by Husband's employer. Further, the term "income" shall not include the cost of goods sold and expenses associated with the production of income or similar items which enter into the computation of gross profit from any trade or business enterprise undertaken by Husband in any capacity.[3]

Appellant attempts to elucidate the intent of the parties through the introduction of parol evidence, in particular, correspondence between the parties' attorneys during the period of negotiations prior to execution of the contract.

█ Therefore, the threshold inquiry is whether such evidence is admissible for the purpose of clarifying the term "income" as employed in the Separation Agreement. The lower court judge held that since the term income was unambiguous, such evidence was inadmissible or at least unnecessary. A property settlement agreement between

2. The trust income at issue flows partly from a trust set up by appellee's grandmother and partly from a revocable trust of which appellee is settlor.

3. The parties amended the definition of income by letter to include net income from a trade or business.

husband and wife will be enforced by the courts in accordance with the same rules of law applying to determining the validity of contracts generally. *Kleintop v. Kleintop*, 291 Pa.Super. 491, 436 A.2d 223 (1981).

■ Where a term is defined in a contract and is, therefore, presumably unambiguous, no further interpretation is justified since if the meaning is clear from the express language of the agreement, judicial construction is unnecessary. *Eannarino v. Eannarino*, 294 Pa.Super. 81, 439 A.2d 760 (1982). In such a case, the parties' intent is to be gleaned from the face of the agreement.

We have said

When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used.

*Litwack v. Litwack*, 289 Pa.Super. 405, 433 A.2d 514, 515 (1981).[4]

■ Concomitantly, when the language is ambiguous and the intention of the parties cannot be reasonably ascertained from the language of the writing alone, the parol evidence rule does not apply to the admission of oral testimony to show both the intent of the parties and the circumstances attending the execution of the contract. *Castellucci v. Columbia Gas of Pennsylvania, Inc.*, 226 Pa.Super. 288, 310 A.2d 331 (1973). This is especially true in a case where the intended meaning of a particular term is actually further clouded by the definition supplied by the parties.

In the case *sub judice*, the word "income" is defined in a way so as to describe what amounts said term shall or shall not include, but said definition is incomplete.

The lower court judge stated

Furthermore, given the experience and competence of the parties' counsel, the considerable effort expended in

---

**4.** For example, *Litwack* concerned the definition of the word "marry", a term which is obviously susceptible to but one interpretation.

drafting this agreement and the ease with which trust income from all sources could have been specifically included as income, the court is unwilling to vary the terms of the Agreement.

(Opinion, Davenport, J. at 3).

■ The agreement expressly states that the term "income" shall include "dividends" and "interest" and shall not include the *"principal* of gifts and inheritances" and "capital gains". Nowhere in the definition of the term "income" is there mention of a "trust" or "trusts". Since "dividends", "interest" and even "capital gains" may just as readily flow through the medium of a trust, the trust acting as a mere conduit, we must resort to case law to clarify the term "income" and the intendment of the parties by their use of the terms "dividends", "interest" and "capital gains".

We are convinced that in this case

While [appellant] cannot use parol evidence to add terms to the original description, such evidence is admissible to clarify the terms of the description, so that the Court can act upon it.

*Powell v. Powell,* 244 Pa.Super. 264, 272, 367 A.2d 314, 318 (1976).

In *Kohn v. Kohn,* 242 Pa.Super. 435, 364 A.2d 350 (1976), the issue on appeal was whether the trial court erred in refusing to receive evidence that the parties used the term "alimony" to mean "child support", or simply, what was the meaning that the parties intended when they used the word "alimony".

In general the court must adopt the construction which gives effect to the parties' reasonable and probable intent, in view of the surrounding circumstances and the purposes of the contract. (cites omitted) And, although a word is generally used for its ordinary meaning, the context of the instrument may indicate it was used in a different sense. (cites omitted) *If the meaning of a*

*term is not clear, aprol (sic) evidence is admissible to resolve the ambiguity,* but not to alter the terms of the contract .... the Restatement of Contracts, Second, § 240 provides: "Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish ... the meaning of the writing, whether or not integrated...." Although there is Pennsylvania law stating that "parol evidence" may not be introduced unless the language of the written agreement is ambiguous on its face, this principle is substantially undercut by a competing proposition that extrinsic facts and circumstances may be proved to show that language apparently clear and unambiguous on its face is, in fact, latently ambiguous ...

*Kohn v. Kohn,* 242 Pa.Superior Ct. at 442–443, 364 A.2d at 353–355. (Emphasis added)

3 Corbin on Contracts, § 590 (1960), states

"Evidence of the facts tending to show that [ ] a fundamental assumption was made, though not expressed in writing, should never be excluded by any 'parol evidence rule.'"

In *Commonwealth ex rel. Grossman v. Grossman,* 188 Pa.Super. 236, 146 A.2d 315 (1958), the sole question was whether the parties contemplated a college education when the father agreed to support his son until his son completed his "schooling".

We should adopt that interpretation which, under all the circumstances of the case ascribes the most reasonable, probable and natural conduct to the parties.

*Id.,* 188 Pa.Superior Ct. at 239, 146 A.2d at 317.

Stating that "a contract is to be taken most strongly against the party on whom the obligation rests", the court noted

Construing the contract most favorably to the son would lead to the conclusion *under all the surrounding circumstances,* that the father at the time when this con-

tract was entered into intended the schooling to include a college education.

Id., 188 Pa.Superior Ct. at 239, 146 A.2d at 317.

■ Here, parol evidence is necessary to ascertain the intent of the parties and to clarify an ambiguous term. We are convinced that the lower court abused its discretion in sustaining appellee's exceptions without considering the proffered parol evidence.

The contract reads in relevant part:

ARTICLE 1. Husband shall make the following payments to Wife:

B. Support payments of $2,333.33, for Wife and children, on or before the fifth day of each month commencing with the month of November 1979, and

(i) In the event that Husband's income shall exceed $125,000 per year, Husband shall make an additional payment to the wife of 15% of the excess over $125,000.

Therefore, support payments under the agreement were to be made monthly in the amount of $2,333.33, which approximates a payment to wife of $28,000 per year, and adjustments upward were to be made only in the event of a significant change in appellee's income, i.e. if his income increased to over $125,000.

Appellee submitted to appellant a statement of income for 1980 which showed

| | |
|---|---|
| Salary | $104,856.00 |
| Interest | 453.00 |
| Dividends | 3,962.00 [5] |
| | $109,271.00 |

This statement omitted any income from the trusts.

Appellee's income for the year 1978 was approximately $110,000, which included *all* income, including dividends and interest from trusts. Appellant contends that the 1978

5. This represents dividends from appellee's Tasty Baking Company stock less dividends received on restricted stock excluded from the agreement ($10,921–6,-959).

figure of $110,000 was used to determine the $125,000 figure for the adjustment in payments to appellant.

A letter from appellee's attorney to appellant's attorney dated September 21, 1979, states

John feels rather strongly that the 15% of amounts over $130,000.00 per year will adequately protect Kathy and I have advised him against use of the Consumer Price Index because of the uncertainty and difficulty of calculations.

Appellant's attorney responded

5. Kathy agrees with your suggestion in your letter concerning the adjustment of support based on income, provided the base is $110,000.00, *which is what it was in 1978*, and not $130,000.00. Otherwise, your comments concerning exclusions from income are acceptable. (Emphasis added)

On October 18, 1979, appellee's attorney wrote, "I believe that it is best for all concerned to avoid annual calculations if possible, and that John and Kathy would both be satisfied if the adjustment upwards came only in the event of a significant change in income. The figure of $125,000.00 approximates 115% of anticipated income for 1979."

It is clear that, at the very least, *appellant* intended to include in "income" that amount which represented income from the trusts. Appellant was apparently operating on the assumption that appellee's income for 1978 was approximately $110,000, which included more than $17,000 of trust income. Indeed, appellee does not list dividends received from the trust separately as "trust income" on his 1978 tax return. Rather than listing them as a receipt from a trust under Schedule E, he lists them, together with the dividends he received directly, on Schedule B entitled "Interest and Dividend Income".

█ It must be borne in mind that inclusion of trust receipts in the definition of "income", which determines the

ultimate payment to appellant, will not result in a shifting of actual dollars of trust income to her; it will merely increase the "base" amount upon which appellee supports himself. Earnings and income are factors to be taken into consideration in determining the parties' rights and obligations upon dissolution of the marriage, so that neither party will suffer undue hardship. Since appellee's income is supplemented by the trust income, a figure intending to depict appellant's income may include receipts from the trust. *See* 23 P.S. § 501(b)(4), 23 P.S. § 47, repealed.[6]

We hold, therefore, that the lower court abused its discretion in not allowing parol evidence to determine whether trust income was intended to be included in the term "income".

An abuse of discretion occurs where the lower court misapplies existing law, makes a manifestly unreasonable judgment or rules with partiality, prejudice or ill will.

*Commonwealth ex rel. Buchakjian v. Buchakjian*, 301 Pa.Super. 213, 447 A.2d 617 (1983). Appellee offers no rebuttal parol evidence to support his argument; our remand will afford him such an opportunity.

Accordingly, we reverse the order of the lower court and remand for proceedings consistent with this opinion.

Jurisdiction relinquished.

6. At the time of the execution of the agreement, the law stated

the court may allow the wife such alimony as her husband's circumstances will admit of, but the same shall not exceed the third part of the annual profit or income of his estate, or of his occupation and labor ...

23 P.S. 47, 1929, May 2, P.L. 1237, § 47. [Amended 1980, Apr. 2, P.L. 63, No. 26, § 503, eff. in 90 days.]