### Commonwealth v. Hooper

C.P. of Blair County, no. 95 CR 1675.

*Elizabeth Doyle,* for the Commonwealth.
*Thomas M. Dickey,* for defendant.

CARPENTER, *J.,* August 30, 1996—This matter comes before the court on omnibus pretrial motions filed by the defendant, Diana Hooper. A hearing was held on August 27, 1996, and the parties were afforded an opportunity to submit additional case law. The hearing having been concluded and the court having reviewed the applicable law, the matter is now ripe for resolution of the two arguments defendant advances

in support of her motion to quash. We will address these seriatim.

Defendant's first argument is that the arresting officer lacked probable cause to stop her vehicle. The facts with respect to the stop are not in dispute. The court heard only the unrebutted testimony of Officer DeBolt in that regard. Officer DeBolt testified that he observed the defendant approaching the checkpoint which had been established. At the time he first observed her vehicle, she had already passed several large signs advising motorists to slow down and heed the checkpoint. The officer testified that the defendant passed the last opportunity to turn prior to the checkpoint. At this point, she stopped her vehicle in the road. She then backed it a distance of approximately 10 yards into the intersection of Third Avenue and Seventh Street against the flow of traffic. Finally, she negotiated a left-hand turn off of Third Avenue onto Seventh Street thereby avoiding the checkpoint on Third Avenue. The officer, observing this behavior, came out into the roadway and shouted at the defendant to stop her vehicle. She failed to do so and proceeded in a southerly direction on Seventh Street. Officer DeBolt then radioed for help and Officer Flynn (who was assisting in the checkpoint) pursued and pulled over the defendant's vehicle. Defendant claims that there was not probable cause to stop her on these facts. We disagree.

Indeed, it is hard to imagine how this court could do more to undermine the legislature's intention in providing for roadblocks to guard the public against individuals driving under the influence of alcohol than to accept defendant's argument. If a defendant is entitled to avoid a checkpoint in this manner without being pursued, then the checkpoint is plainly unenforceable. This would render the police checkpoint a nullity since

it would be only voluntary. The defendant's action clearly was an attempt to avoid the checkpoint. Additionally, Officer DeBolt testified that he would have stopped the defendant for backing through the intersection on this major two-lane highway even if the checkpoint had not been in operation at the time. The driving which Officer DeBolt testified to was dangerous, violative of the Vehicle Code, and also clearly rendered the vehicle suspicious under the circumstances. Accordingly, the officer acted properly and with probable cause in summoning assistance to investigate the defendant's behavior further.

Defendant next contends that the establishment of the roadblock was improper due to violation of the standard set forth in *Commonwealth v. Tarbert,* 517 Pa. 277, 535 A.2d 1035 (1987). This assertion by the defendant is also without merit. The issue before the court is whether or not the *Tarbert* standard was met in this case. That standard requires that in order to sustain constitutional muster, a sobriety checkpoint must be conducted in substantial compliance with particular guidelines which we quote from the case of *Commonwealth v. Trivitt,* 437 Pa. Super. 432, 650 A.2d 104 (1994):

"First, the very decision to hold a drunk-driver roadblock, as well as the decision as to its time and place, should be matters reserved for prior administrative approval, thus removing the determination of those matters from the discretion of police officers in the field. *In this connection it is essential that the route selected for the roadblock be one which, based on local experience, is likely to be traveled by intoxicated drivers.* The time of the roadblock should be governed by the same consideration. Additionally, the question of which vehicles to stop at the roadblock should not be left

to the unfettered discretion of police officers at the scene, but instead should be in accordance with objective standards prefixed by administrative decision." *Id.* at 437, 650 A.2d at 106. (emphasis in original)

This standard is clearly met. First, there is no question based on the testimony which this court heard that the decision to institute the roadblock was a matter which was approved administratively and in no sense was discretionary with the police officers in the field. There was uncontradicted testimony at the hearing by Chief Michael Hoover, the officer in charge of the countywide checkpoint system, that an administrative hearing was held on September 7, 1995, which predated and, in fact, was the planning session for the September 29, 1995 road check. At this session the checkpoint location and the conduct of the checkpoint was determined and administratively planned without input from any of the actual field officers involved.

Second, it is clear from the testimony of Chief Hoover that the route selected for the roadblock was one which, based on local experience, was likely to be traveled by intoxicated drivers. Chief Hoover testified that the planners of the checkpoint acquired statistics showing this segment of Route 22 to be among the most dangerous (rated fourth) stretches of highway in Blair County according to PennDOT statistics measuring traffic flow and accidents that were driving under the influence related. The planners further received information from Chief White of Duncansville Borough as to statistics which he had compiled showing a high number of arrests (18) for driving under the influence on this stretch of Third Avenue in the Borough of Duncansville over the two calendar years preceding the meeting to determine the location of the checkpoint.

We conclude, having heard the testimony of Chief Hoover, that the selection of this location was not arbitrary in any sense. It was based on information compiled by individuals who had specific knowledge of the likelihood of this road being traveled by intoxicated drivers. The information on which they based their decision was admitted into the record of the proceeding and we conclude constituted a reasonable safeguard in terms of the constitutionality of this checkpoint. The planners had in their possession not only the statistics but the certification from PennDOT as to their accuracy. This was information on which they were reasonably entitled to rely.

We note that defendant contends that we should not have admitted this evidence into the proceeding since the individuals who compiled the information did not appear and testify at hearing to its accuracy. We believe defendant's reliance on this hearsay principle is misplaced and misconstrues the Superior Court's decision in *Commonwealth of Pennsylvania v. Trivitt, supra.* In *Trivitt,* a panel of the Superior Court concluded that since the director of the Center for Highway Safety in York County (a Mr. Harper) was unable to answer questions relating to the number of arrests, the number of DUI-related accidents, and the number of DUI arrests on the particular section of the road in question that the public was not adequately safeguarded given his demonstrated lack of knowledge at hearing against the possibility that the location of the checkpoint was, in fact, arbitrarily selected. In the case sub judice, Chief Hoover brought the documentation on which he had relied with him to court and was able to answer all of counsel's questions in these regards. Under these

circumstances, we believe that the report was not hearsay, recognizing that the reason for the *Tarbert* rule is not to establish the truth of the information brought forward but rather to determine whether the checkpoint was *arbitrarily selected.* Clearly, given the extent of the information brought forward and relied upon, the checkpoint was not arbitrary. Accordingly, we have no basis to conclude that this was hearsay.

Finally, the time of the roadblock and the issue as to the selection of those vehicles to be stopped also clearly pass constitutional muster. The planners researched from the PennDOT records the appropriate time to set the roadblock. Further, since they decided to stop all vehicles either eastbound or westbound on Route 22 during the designated time period, they eliminated any question of police discretion in terms of which vehicles were to be stopped. For all of these reasons, we find that the roadblock at issue has met the constitutional requirements set forth in *Tarbert.* Accordingly,

## ORDER

Now, August 30, 1996, it is ordered, directed and decreed that the defendant's motions to quash are denied.