595 A.2d 617

COMMONWEALTH of Pennsylvania

v.

**Juan SANCHEZ, Appellant.**

Superior Court of Pennsylvania.

Submitted May 28, 1991.

Filed Aug. 2, 1991.

Floyd P. Jones, York, for appellant.

Christy Haas Fawcett, Asst. Dist. Atty., Hanover, for the Com., appellee.

Before POPOVICH, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge.

A jury convicted Juan Sanchez of possession of cocaine with intent to deliver and of criminal conspiracy. The Honorable John F. Rauhauser, Jr. imposed a mandatory, minimum sentence of three to six years' imprisonment and a mandatory fine of $15,000. On this direct appeal from judgment of sentence, Sanchez raises a single issue: Were the several references to Sanchez as an "illegal alien" inadmissible statements of unrelated, prior criminal activity which, by virtue of their prejudicial impact, required that a mistrial be granted?

We determine that the evidence permitted the jury to improperly conclude that Sanchez had engaged in prior criminal conduct. Also, we find the statements to have been irrelevant. We conclude, nevertheless, that the introduction of the testimony of Sanchez' immigration status was harmless when viewed in the light of the entire record. Accordingly, we affirm the judgment of sentence.

The trial lasted one and one-half days, including jury deliberation of less than one hour. During the assistant district attorney's opening statement to the jury, while previewing the first portion of the Commonwealth's case, the following transpired:

**MS. FAWCETT [ASST.D.A.]:** .... He [Sanchez] also told Officer Concepcion that he was an illegal alien and had come here from the Dominican Republic.

**MR. JONES [ASST.P.D.]:** Your Honor, can we approach the Bench?

       *     *     *     *     *     *

(Whereupon the following discussion was held on the record at sidebar:)

**MR. JONES:** We would move for a mistrial based on her reference to the fact that he allegedly said that he was an illegal alien which has no bearing on this case whatsoever.

**THE COURT:** The motion is denied.....

Transcript of Proceedings, January 8, 1990, page 9. Later the same morning, near the conclusion of the direct examination of the third witness, City of York Police Officer Ed Concepcion, the following occurred:

**BY MS. FAWCETT:**

Q. Continue, Officer Concepcion, but don't continue there.

A. I showed him the utility bill with his name and address of 42 College Avenue on it and I asked him if that was his and he said no. I asked him if Juan Sepeda was the same subject who ran out the back door and he said yes. I also asked Juan Sanchez if he was an illegal alien—

**MR. JONES:** Objection.

**THE WITNESS:** And he said yes.

**THE COURT:** Overruled.

**MR. JONES:** I would request a mistrial.

**THE COURT:** Overruled.

*Id.* at page 37.

Sanchez contends that the trial court erred in denying his requests for a mistrial after the comments were made regarding his status as an illegal alien. Specifically, he argues that those statements connote prior criminal activity for which Sanchez was not being charged. He further

contends that the prejudicial impact of the statements outweighed their probative value.

A recent formulation of the rule regarding the admissibility of evidence of distinct crimes is set forth by our supreme court in *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989), where Justice Larsen declared:

Evidence of a defendant's distinct crimes are not *generally* admissible against a defendant *solely* to show his bad character or his propensity for committing criminal acts, as proof of the commission of one offense is not *generally* proof of the commission of another. However, this general proscription against admission of a defendant's distinct criminal acts is subject to numerous exceptions where special circumstances exist which render such evidence relevant for some legitimate evidentiary reason and not merely to prejudice the defendant by showing him to be a person of bad character. Some of the exceptions that this Court has recognized in the past as legitimate bases for admitting evidence of a defendant's distinct crimes include (but are not limited to): (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "res gestae" exception).

Of course, the admissibility of evidence is a matter addressed to the sound discretion of the trial court and an

appellate court may only reverse rulings on admissibility upon a showing that the lower court abused its discretion. As with any evidentiary ruling, the trial court should balance the relevancy and evidentiary need for the evidence of distinct crimes against the potential for undue prejudice.

521 Pa. at 177, 555 A.2d at 840. (Emphasis in original, citations omitted).

In support of the claimed admissibility of the two statements regarding Sanchez' immigration status, the Commonwealth first looks to *Commonwealth v. Bova*, 180 Pa.Super. 359, 119 A.2d 866 (1956). There, a police officer was permitted to testify to a statement voluntarily made by one of three co-defendants in a burglary prosecution who had gotten out of a car, walked over to where the police officer had arrived in front of the building being burglarized, and blurted out his claim of innocence and ignorance of any wrongdoing, including his being on parole. We there held that the statement was not admitted for the purpose of showing other distinct crimes but "as a part of the entire action." *Id.*, 180 Pa.Superior Ct. at 363–64, 119 A.2d at 868. We there relied upon *Commonwealth v. Davis*, 363 Pa. 91, 69 A.2d 123 (1949), which found admission of testimony concerning the defendant's prior prison service to be harmless, after finding that a timely objection had not been made, the trial court had provided a cautionary instruction following the belated objection, and the evidence was part of an unrepudiated confession.

Since its publication in 1956, the case of *Commonwealth v. Bova, supra*, has never been cited for the proposition that statements that constitute "part of the entire action" may be admissible. Moreover, the *Davis* case, upon which the *Bova* court relied, involved review of an evidentiary instance where the trial judge had advised the jury following a recess that, had a timely objection been made, he would not have permitted an answer regarding the defendant's alleged fugitive status. We therefore find *Bova* to

be inadequate to support admission of the testimony here under review.

Based upon the Commonwealth's references to Sanchez' status as an illegal alien, the jury could reasonably infer that Sanchez had engaged in illegal conduct in the past. It would be reasonable for a jury to infer, upon hearing that Sanchez was in this country "illegally", that he had engaged in prior criminal conduct. Thus, there was the danger that the jury would be predisposed to think of Sanchez as guilty. *Commonwealth v. Knapp*, 374 Pa.Super. 160, 542 A.2d 546 (1988).

In addition, Sanchez' status as an illegal alien was completely unrelated to the charges upon which he was being tried. There was no suggestion, at trial, that his status was connected to the crimes at issue. In spite of this, the Commonwealth attempts to argue on appeal that Sanchez' admission concerning his status as an illegal alien was relevant and probative to show intent. We reject this contention.

Specifically, the Commonwealth argues that Sanchez' "status as an illegal alien was highly probative of his criminal intent because the jury could infer that one who enters this country illegally is often likely to have some illicit motive for doing so." Brief for Appellee at page 8. There is no evidence in the record to support such an assertion. We find no connection whatsoever between a person's status as an alien and that person's propensity or desire to traffic in narcotics. The Commonwealth's suggestion that those who enter this country illegally have some secondary criminal purpose is nothing more than dangerous speculation which we expressly reject. This sort of inference, which allows for a finding of guilt premised on a defendant's supposed propensity to commit crime, is precisely the inference against which the rule set forth in *Billa* and *Knapp* is designed to guard.

We conclude that the reference to Juan Sanchez as an "illegal alien" should have been excluded from the trial

because it was irrelevant and it allowed the jury to improperly conclude that Sanchez had engaged in prior criminal activity. This does not end the analysis, however. There is no *per se* rule requiring a new trial every time there is a reference to prior criminal activity. *Commonwealth v. Wallace*, 522 Pa. 297, 308, 561 A.2d 719, 724 (1989). Where the evidence establishing a defendant's guilt is both overwhelming and uncontroverted, a reference that defendant's prior criminal conduct may be found to be improper and yet harmless at most. *Id.*, 522 Pa. at 308–309, 561 A.2d at 725.

Our supreme court, speaking through the Honorable James T. McDermott, has recently restated the rule governing a harmless error analysis:

Since this evidence was improperly admitted we must determine whether its admission constituted harmless error. The standard applied to determine whether an error is harmless is whether an appellate court is convinced beyond a reasonable doubt that the error is harmless.

An error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Furthermore, in applying the overwhelming evidence test to determine if an error is harmless a court may rely only on uncontradicted evidence.

*Commonwealth v. Duffey*, 519 Pa. 348, 365–366, 548 A.2d 1178, 1186 (1988) (citations omitted).

■ Applying this rule to the facts in this case, we have no difficulty in finding the evidence of guilt so overwhelming and the prejudicial effect of the error so insignificant by comparison that we must conclude the error was harmless and the judgment of sentence should be affirmed. *Commonwealth v. Wallace, supra*, 522 Pa. at 308–309, 561 A.2d at 724–25.

Sanchez was convicted by a jury of possession of cocaine with intent to deliver and of conspiracy. All of the testimo-

ny presented went uncontradicted inasmuch as Sanchez presented no witnesses and did not testify himself.

Police testified that when they arrived at Sanchez' residence to execute a search warrant, Sanchez answered the front door. During the search, officers found $240 on Sanchez' person; several bags of cocaine inside a car battery with a false compartment; utility bills addressed to Sanchez at the address searched; additional cocaine inside an aerosol can with a false bottom, and drug records.

William Harrison, a co-defendant, testified that he was in Sanchez' apartment for the purpose of purchasing an eighth of an ounce of cocaine from Sanchez. Harrison had given money to Sanchez for the drugs and Sanchez was in the process of obtaining the cocaine when police raided. Harrison also testified, without contradiction, that he had purchased drugs from Sanchez at that same address on two occasions approximately a week before police raided.

Joseph Murray testified that he, also, was present in Sanchez' apartment at the time the police raided. He testified that he and Harrison had agreed to pool their money to purchase cocaine from Sanchez in order to obtain a better price. After Sanchez answered the door to his apartment, Murray handed him the money for the drugs and Sanchez sent another person to retrieve the cocaine from its hiding place. It was at this point that police entered the residence. Murray also testified to having purchased cocaine from Sanchez at the same residence the day before the police raided.

Detective John A. Daryman of the York City Police Department was qualified as an expert in the area of illegal drug transactions and testified that in his opinion, the person who possessed the drugs found in Sanchez' apartment possessed them with intent to deliver. Prasad Dasgupta, a chemist with the Pennsylvania State Police Crime Lab, testified that the substance seized from Sanchez' apartment was pure cocaine weighing over 61 grams.

None of this evidence has been challenged on this appeal. The sole argument advanced by Sanchez is that, in spite of the overwhelming evidence of his guilt on both charges, the erroneous introduction of his own admission as being an illegal alien mandates a new trial. On these facts this would result in the creation and application of a *per se* rule which clearly would not be in accordance with Pennsylvania law. *Commonwealth v. Wallace, supra,* 522 Pa. at 308–309, 561 A.2d at 724 (citing *Commonwealth v. Stephen Quintin Morris,* 513 Pa. 169, 175–76, 519 A.2d 374, 376–77 (1986)); *accord Commonwealth v. Kelvin Morris,* 522 Pa. 533, 540–541, 564 A.2d 1226, 1229 (1989).

We recognize that the conclusion—that the properly admitted evidence is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error is harmless,—is not to be arrived at lightly. *Commonwealth v. Story,* 476 Pa. 391, 413, 383 A.2d 155, 166 (1978), citing (*Commonwealth v. Davis,* 452 Pa. 171, 178–79, 305 A.2d 715, 720 (1973)). We also understand that the harmless error analysis is a two-step process, and that a reviewing court must first determine whether the untainted evidence, considered independently of the tainted evidence, over-whelmingly establishes the defendant's guilt before it may proceed to consider whether the error was so insignificant by comparison that it could not have contributed to the verdict. *Story, supra,* 476 Pa. at 409, 383 A.2d at 166.

Sanchez does not even intimate on this appeal that the evidence of guilt was anything other than overwhelming. Turning then to the irrelevant references to Sanchez as an "illegal alien", they occurred but twice during the trial. First, the prosecutor during her opening statement to the jury gave a detailed description of the statement that Sanchez had given to the police at the time of his arrest. This included Sanchez admitting to the police that he was an illegal alien and had come to the United States from the Dominican Republic. Defense counsel moved for a mistrial and it was denied. Later, Officer Concepcion testified to his

conversation with Sanchez at the time of the latter's arrest. Concepcion testified that he asked Sanchez if he was an illegal alien and Sanchez responded, "Yes." Again, defense counsel moved for a mistrial, following a general objection, and that was denied.

In his brief, Sanchez advances only two assertions to support his claim that he was irreparably injured by the references to his illegal status within this country. At page 7 of his brief, Sanchez states:

Clearly, establishing that the appellant is "illegal", Hispanic, and from the Dominican Republic can have nothing but a deleterious effect upon the members of the jury. Such evidence without question appeals to those qualities which a juror must leave behind when he fulfills his function as a juror.

At page 9 of his brief, Sanchez concludes by asserting:

Simple [sic] put, the Commonwealth chose to use prejudicial and non-relevant evidence in this case. Such evidence clearly created prejudice and animosity among the jury. Such tactics are not permissible, wherefore a new trial is mandated.

Sanchez through his brief has not applied the second step of the two-step process in the harmless error analysis: Were the two references to Sanchez' alien status, both of which attributed that status to an admission by Sanchez to the arresting officer, of such a nature as to have contributed to the guilty verdict on the drug charges? Is there any possibility that, without the references to his alien status, Sanchez would have been found not guilty by the jury on the untainted evidence? Were the one reference during opening and the one reference during Concepcion's testimony to the defendant's immigration status of such quality or import that, by comparison to all of the testimony from at least five other witnesses, it would have contributed to the verdict causing the jury to move from a possible not guilty verdict to a guilty verdict? The answer to all three, or any one, of these questions must be in the negative.

This is not a case in which the credibility of the defendant, or of any defense witnesses, is a critical issue before the jury. Nor is it a case where a defense theory of misidentification may have been impeded by the introduction of improper testimony relating to prior crimes not involving dishonesty or false statement. *Compare Commonwealth v. Williams*, 524 Pa. 404, 573 A.2d 536 (1990). Sanchez was arrested in his apartment while in the process of completing the sale of cocaine to third persons. The uncontradicted testimony established his presence and control of substantial amounts of pure cocaine. The evidence was clear that Sanchez was working with another person in making his drug sales.

We find the evidence of guilt to be overwhelming. We find the isolated reference to Sanchez as an illegal alien to be totally inconsequential. We are convinced beyond a reasonable doubt that the introduction of the testimony of Sanchez' immigration status was, at most, harmless. Accordingly, we affirm the judgment of sentence.

Judgment of sentence AFFIRMED. Jurisdiction relinquished.

HOFFMAN, J., files a dissenting statement.

HOFFMAN, Judge, dissenting:

I respectfully note my dissent. I believe that the harmless error doctrine has been indiscriminately exaggerated and overextended. The jury here reasonably could have made the inference that appellant had engaged in prior criminal activity. Indeed, to the average juror the revelation that appellant was an "illegal alien" connotes malodorous and repugnant behavior. From those deliberate references to this unrelated and irrelevant criminal activity, the juror could derive appellant's guilt. Therefore, I would find that the error was not harmless and that there was a reasonable possibility, even likelihood, that the references by the Commonwealth contributed to the conviction. *See Commonwealth v. Story*, 476 Pa. 391, 409, 383 A.2d 155,

166 (1978) (citation omitted). Accordingly, I would remand for a new trial.