629 A.2d 940

**COMMONWEALTH of Pennsylvania**

v.

**Judy D. STANLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 25, 1993.

Filed June 17, 1993.

Reargument Denied Aug. 30, 1993.

Neil E. Rothschild, Oil City, for appellant.

Marie T. Veon, Dist. Atty., Franklin, for Com., appellee.

Before BECK, TAMILIA and HESTER, JJ.

BECK, Judge.

In this appeal from the judgment of sentence for conviction of driving under the influence of alcohol, we consider for the first time whether a jury's knowledge that an appellant was given a preliminary breath test constitutes error warranting the grant of a new trial. We hold that while such information is inadmissible and may provide cause for a new trial, the error here was harmless and the judgment of sentence is affirmed.

Appellant was convicted by a jury of driving while under the influence of alcohol to a degree which rendered her incapable of safe driving. 75 Pa.C.S.A. § 3731(a)(1). The jury was hung on the charge of driving with a blood alcohol level of .10% or greater, 75 Pa.C.S.A. § 3731(a)(4), and a mistrial was declared on that charge.[1] Appellant challenges the ruling of the trial court permitting the district attorney to inform the jury that appellant was administered a preliminary breath test when she was stopped by police; further, appellant alleges error on the part of the trial judge for instructing the jury that while they would not hear and could not speculate about the results of the test, the purpose of the test was to assist an officer in deciding whether to make an arrest.

At trial, the Commonwealth relied on the testimony of Police Officer Robert Hartle who stated that he observed appellant proceeding through an intersection against a red light and pulled her over to issue a citation. Upon detecting a strong odor of alcohol on her breath and noting her eyes were glassy and red, Hartle asked appellant to exit her vehicle to perform three field sobriety tests. When Hartle testified that

---

1. Appellant also was charged with the summary offense of failing to stop at a red light. After trial, the court found her not guilty of that charge.

he asked appellant to perform three tests, counsel for appellant objected and, at a sidebar discussion, moved the court to prohibit any testimony about one of the tests, the preliminary breath test (PBT). The district attorney requested that she be allowed to introduce the fact that the test was given and that appellant had failed it, without telling the jury the actual reading of the result. The trial court acknowledged that the result of the PBT was not admissible; however, it ruled that the prosecution could reveal to the jury that the test was given but could not elicit any further testimony about the it.

Hartle then testified at length about appellant's performance of the "one-legged stand" test, which she was unable to complete satisfactorily, and the "walk and turn" test, which she also failed. The district attorney asked Hartle if he administered any other tests to which he replied that he had given appellant a "preliminary breath test." Hartle was not asked any other questions with respect to the test. At that point, the trial judge instructed the jury about the PBT and stated that the test was used by officers in the field to determine probable cause to arrest, that is, "to avoid making an arrest unless [there is] a good basis to make an arrest." The court explained that PBT results are inadmissible at trial because they are not sufficiently reliable as the machine is not adequately tested or calibrated to render its results suitable for the jury's consideration. The court informed the jury that they could:

> consider that fact that the officer did use and administer it and, of course, it forms part of the basis for his opinion which he'll probably express in a few minutes in this case. And you may consider the fact that he used it in the course of exercising proper procedures in making the arrest, but you should not speculate or consider the results as substantive evidence in this case as far as whether or not the blood alcohol was at a certain level.

Appellant objected to the court's instruction, claiming that the instruction led the jury to conclude that appellant had failed the test. It is appellant's position that the jury should not have been made aware of the test at all.

■ It is clear, and the Commonwealth concedes, that the results of a PBT are not admissible at trial. *Commonwealth v. Myrtetus*, 397 Pa.Super. 299, 580 A.2d 42 (1990). The *Myrtetus* court noted that the PBT device, although approved by the Department of Health, is not tested or calibrated; therefore, its results are not admissible under 75 Pa.C.S.A. § 1547(c), which requires that breath, blood and urine tests be conducted by qualified persons using approved and regularly tested equipment in order for their results to be admissible. *Id.* at 308, 580 A.2d at 47. Further, the statute authorizing the use of PBTs states explicitly: "The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest." 75 Pa.C.S.A. § 1547(k). In this instance we are faced with the question of whether the officer's testimony that the test was given, and the trial court's subsequent explanation of its purpose, requires a new trial.

■ Helpful to our analysis of this issue of first impression is the body of cases addressing polygraph tests. Like PBTs, the results of lie detector tests are inadmissible at trial due to their unreliable nature. Therefore, any reference to a lie detector test which raises an inference concerning the guilt or innocence of a defendant is inadmissible. *Commonwealth v. Camm*, 443 Pa. 253, 269, 277 A.2d 325, 333 (1971). The mere mention of a lie detector test, however, does not constitute reversible error. In *Commonwealth v. Miller*, 497 Pa. 257, 439 A.2d 1167 (1982), a prosecution witness mentioned that police wanted to give him a lie detector test to see if he was telling the truth. Our supreme court held that a new trial was not required because the question asked of the witness was not designed to elicit information about the test, the result was not mentioned, the answer was so vague that it was unclear whether the test was even administered and the trial court promptly instructed the jury to disregard the comment and not to speculate about the test. *Id.* at 264, 439 A.2d at 1171. Similarly, in *Commonwealth v. Upchurch*, 355 Pa.Super. 425, 513 A.2d 995 (1986), *appeal denied*, 514 Pa. 630, 522 A.2d 558 (1987), a panel of this court held that an accidental

reference to a polygraph was not prejudicial because the reference was not sought by the prosecution and the testimony was stricken from the record. The *Upchurch* court also noted that the results were not revealed and it was not clear from the testimony that the test was given. *Id.* at 432–35, 513 A.2d at 998–99.

Appellant's case is much different. Unlike in *Miller* and *Upchurch*, it is clear from the testimony of Officer Hartle that the test was administered to appellant. Further, the prosecution deliberately elicited from the officer the fact that the test was given. The testimony was not stricken from the record; indeed, the trial court specifically instructed the jury that they could consider the fact that the test is used to assist an officer in deciding whether to make an arrest. While the results of the test were not revealed, the instruction of the trial court certainly may have led the jury to conclude that appellant had failed the test.

■ For all of these reasons, we find that the trial court erred in allowing the Commonwealth to introduce testimony that the test was given and further erred in instructing the jury that the test could be considered, even for the limited purpose of establishing probable cause to arrest. PBTs are to be treated like polygraph tests—their results are inadmissible and any deliberate attempt to reveal to the jury the fact that the test was given, even without letting the jury know the result, is error.

■ Our inquiry does not end here, however; we must determine whether the admission of the evidence resulted in prejudice to appellant. *See Upchurch*, 355 Pa.Super. at 432, 513 A.2d at 998; *Commonwealth v. Sweger*, 351 Pa.Super. 188, 194–96, 505 A.2d 331, 334 (1986), *appeal denied*, 513 Pa. 634, 520 A.2d 1385 (1987). The other evidence supporting appellant's conviction for driving under the influence of alcohol/incapable of safe driving was substantial. Officer Hartle testified with particularity about appellant's performance of the other two field sobriety tests. He stated that appellant was unable to hold her leg up and count as required and that she

could not walk a straight line placing one foot in front of the other without swaying from side to side, stepping off to the side and repeatedly raising her arms to regain her balance.[2] He stated that her speech was slurred and difficult to understand. He also testified to detecting an odor of alcohol on her breath and noticing that her eyes were glassy and bloodshot. These observations, combined with the officer's testimony that he saw appellant run a red light, clearly are sufficient to convict on the charge of DUI/incapable of safe driving. *See Commonwealth v. Karch,* 349 Pa.Super. 227, 229–32, 502 A.2d 1359, 1361–62 (1986). Since there was ample evidence to convict appellant without mention of the PBT, the admission of the PBT constitutes harmless error. *See Commonwealth v. Foy,* 531 Pa. 322, 326–28, 612 A.2d 1349, 1352 (1992); *Commonwealth v. Sanchez,* 407 Pa.Super. 234, 240–42, 595 A.2d 617, 621 (1991), *appeal denied,* 529 Pa. 668, 605 A.2d 333 (1992).

■ The jury's verdict lends further support to our holding that admission of the evidence was harmless. The trial court instructed the jury that they were not to speculate whether appellant passed or failed the PBT. In addition to the testimony regarding the field sobriety tests, the results of a subsequent breathalyzer test, with a reading of .12%, was entered into evidence by stipulation of the parties.[3] Notwithstanding this evidence, the jury was hung on the other DUI

---

**2.** Appellant admitted that she drank three glasses of wine before driving her car that night, but did not believe she was under the influence of alcohol. She claimed that her excessive weight, a prior back injury and her nervousness over being stopped by police all contributed to her inability to perform the tests adequately.

**3.** Unlike the PBT, the breathalyzer test is performed at the station house. Typically, a breathalyzer device is approved by the Department of Health, is operated by a qualified person and is calibrated and tested for accuracy. Its results are admissible at trial, as they were in this case. For a discussion of the differences between a PBT and a breathalyzer test, *see Wall v. Commonwealth,* 114 Pa.Cmwlth. 397, 539 A.2d 7 (1988). Appellant was given a breathalyzer test at 11:32 pm, approximately 45 minutes after she was stopped by Officer Hartle. At trial, a doctor testified for appellant and stated that appellant's blood alcohol level would not have been above the legal limit at the time she was stopped by police.

charge of driving with a blood alcohol level of .10% or greater. If the jury had considered the evidence of the PBT (despite the trial court's instruction) and decided the level was above the legal limit (even without hearing it), it is likely they would have found appellant guilty of the other DUI charge. The mistrial on that charge supports the notion that the jury did not credit the PBT or the breathalyzer test.

Judgment of sentence affirmed.

HESTER, J., files a dissenting opinion.

HESTER, Judge, dissenting.

I must respectfully Dissent. I agree with the majority that "the trial court erred in allowing the Commonwealth to introduce testimony that the test was given and further erred in instructing the jury that the test could be considered, even for the limited purpose of establishing probable cause to arrest." "Preliminary Breath Tests are to be treated like polygraph tests—their results are inadmissible and any deliberate attempt to reveal to the jury the fact that the test was given, even without letting the jury know the result, is error."

I disagree with the majority, however, with their conclusion to the effect that the admission constitutes harmless error. Even though the jury heard testimony that the results of appellant's breathalyzer test was .12%, they did not convict her of driving with a blood alcohol level of .10% or greater. The court advised the jury that the preliminary breath test was used by the police to assist them in determining whether or not they have probable cause to arrest and that the jury could consider the fact that the officer did use the test and administered it. Even though the jury was not told the results of the test, they were very aware of the results. The appellant was arrested. This had to impact upon the jury.

In my judgment, this was a serious error. I would grant a new trial.